Good morning, your honors. Attorney Hanley for Susan Johnson and Jocelyn Welch et al. Good morning. And, your honor, if I may reserve rebuttal time, please. Two minutes. Two minutes. You may. Thank you. May it please the court. The district court in this case found that defendants violated plaintiff's 14th Amendment substantive due process rights. I will not belabor a recitation of the tragic facts beyond summarizing that the district court properly decided that defendants enhanced the danger to plaintiffs faced by James Pack, and then they misled the plaintiffs about that danger that they faced. The question before this court is whether Officer Dexter, despite the constitutional violation, is nevertheless entitled to qualified immunity on the basis that his actions were not sufficiently clearly established violation of the Constitution in 2012. The Irish 2 opinion forecloses any argument that the state created danger doctrine did not exist as a viable theory of liability in the First Circuit in 2012. This court in the 2020 Irish 2 opinion, applying cases to the 2018 fact pattern, reviewed what it referred to as the contours cases. Of those nine cases, every case but one was decided either prior to 2012 or applied to a fact pattern that occurred prior to 2012. This court also in Irish 2 opinion relied on Rivera's warning bell, and Rivera was in 2005. Even if we accept that the state created danger doctrine existed at the time, how were the within it? Yes, Your Honor. So is the question whether we require more specific notice than just the fact that the doctrine existed? Yes. Yes. And I think I'm thinking in particular, is there a factually similar case to this one that we could look to? So two answers to that, Your Honor. The first is that I don't believe that the Irish 2 opinion requires that there be a sufficiently similar fact pattern because the court in that, defendants in that case argued the same thing, that there was not a sufficiently similar fact pattern to their case. And this court said that was not required. And they said that Rivera gave the notice that when officers enhance danger to the plaintiffs, that they can be liable. And that was enough to apply it to that fact pattern. But with respect to whether similar fact patterns do exist, the Mackey case and the McClammy case, although they post-date the facts and so therefore did not provide retroactive notice to the officers, those two cases are materially similar to our case. And those two cases show that when faced with the same type of fact pattern as in our case, the Ninth Circuit applied the same jurisprudence that we had based on the Irish 2 case to a similar fact pattern and said that the officers in that case were properly on notice. Counsel, but aren't the facts of those cases actually very different than the facts here? And I understand your first argument that you don't need a case on all fours, but I think what we say is if you don't need a case on all fours, it has to be especially clear that what you're doing violates somebody's constitutional rights. So aren't the facts in those cases quite different given that the police officers revealed information that the suspect didn't know about? So with respect to the Mackey and the McClammy cases, yes, the officers revealed information. What I would submit is similar to our case, though, is that in both cases by the way they described is riling up the potential defendant to a very obviously violent degree. I understand your argument that it's agitation in those cases and it's agitation here, but I think what I'm trying to get at is something more specific, that the agitation in those cases was caused by doing something that clearly was inconsistent with police practice, telling an abuser or a violent person that the person they're abusing has reported them to the police. That is clearly something that's going to have a problematic outcome. What is the clearly problematic thing that the officer did here? So to that point, Your Honor, this court has made clear that mere violations of policy are not necessarily a violation. So even if there were a specific policy that they violated, that wouldn't necessarily carry our burden. But I understand it's relevant to the egregiousness of the conduct. In this case, there was another policy that would have required that the officers do a mental health evaluation of a person who is clearly dissembling in front of them. So while it's not as similar as I called the defendant and told them the victim is making complaints, there was still a policy on point that wasn't followed and then led to the enhancement of the danger. But wasn't that policy specifically written in a way that it left it up to the police officer's discretion? Where again, I don't think it's really a discretionary call whether you tell an abuser that the victim has reported them to the police at the beginning of an investigation. My counterpart might argue that almost all of the policies are in fact discretionary, but I understand the concern that it's kind of a sliding scale of obviousness that may be calling a victim is more obvious than what happened in this case. But in this case, the officer was also faced with someone making direct threats, saying he was going to harm the plaintiff, saying he was going to shoot them, and it was imminent in that moment. And so those other cases, while the initial action of calling the victim clearly tipped off all the conduct, they were also separated in time. In this case, we have an officer who's standing face-to-face with the person who is saying they're going to commit the crime and then still not following the policies that they should follow to reduce the agitation or reduce the harm completely. So you think that what he did that was clearly wrong was a failure to do a mental health evaluation? Well, I think first, it's the aggravating him by confirming his belief that he had no rights in the situation, that the officer couldn't help. It was also in enabling him to believe... Counsel, you know, I have the same questions that my colleagues have about what specifically you are alleging was the state-created danger. I take it you don't think it falls under the state-created prong. It falls under the enhancement prong. Can we just start there? Yes, Your Honor. It is under the enhancement prong. Okay. All right. So when your opening comments suggested that the theory you were relying on was a failure to give notice to the tenants that they needed to do more to protect themselves, is that really your theory of the enhanced danger? Not the entire theory, Your Honor. That is, in this court in Irish II, one part of the notice that this court said the officers had was with respect to the Kennedy prong of misleading about the danger. So I think that's an allegation. So what was misleading? When the officer did not tell the tenants that Pack was making direct threats, the nature of the threats, that his conduct was more agitated and more enhanced than it had been when they saw him and when they called. And then the misleading nature of basically saying just stay away made them unaware that there was such an immediate and direct threat. But the first part, Your Honor, they have to first enhance the danger for that second part to be relevant. Okay. You began to make an argument that the officer told the landlord that he had no rights, that only the tenants had rights. I didn't see that in the transcript. I see that the landlord took what the officer said to amount to that, but I didn't see any statement by the officer that he, as the landlord, had no rights. So, Your Honor, if I can clarify that, you're correct that the actual language of I have no rights came from Mr. Pack, but there was a follow-up from Officer Dexter where Officer I don't have it in front of me, but he said that's the downside to being a landlord in Maine. So, confirming that belief. Excuse me. Why would an officer who has said repeatedly this is a civil matter, you could an eviction action, and you can go to court, you can pursue the matter there. Why would a reasonable officer, having made those statements, think that the failure to rebut the landlord's statement created, excuse me, enhanced the risk of murder? So, Your Honor, that was the initial part of the conversation that went to enhancing. The rest of it, so, is confirming the person's belief that he has no rights, and then also enabling the defendant, Mr. Pack, to believe that he could act on that by when Mr. Pack said, I told them I'm going to shoot them, I want to shoot them, the officer merely says you can't say that. This is a civil issue. And so, it's a combination, Your Honor. I don't believe that the one piece of you have no rights is the only part, but it's part of the whole conversation that was happening, Your Honor. So, the officer's enhancement of the danger was not saying you can't shoot them, but you can't say that? Yes. So, the officer says you can't say that, and then takes no further steps to basically make sure that Mr. Pack understands that he can't actually act on those threats. But didn't the officer say something like that at the beginning of the encounter? So, at the very beginning of the encounter, the officer first does talk about, I believe this is a civil issue, you can't make threats. But during the 25, or I think it's 18 minutes that the officer is speaking with Pack, Mr. Pack's agitation increases, and the threat, the nature of what he's saying increases. And the district court found that increasing the level of agitation was sufficient for the affirmative act. No, the district court found only that a jury could so conclude. Yes, Your Honor. And not as a matter of law, that it was in fact concluded. Okay, so what else is there to your theory about enhancement? You've given us four or five different clues. Have you omitted anything? So, if I have omitted, Your Honor, I would state that I agree with the district court's recitation of the facts and how Officer Dexter enhanced the danger. The further enhancement, though, is the misleading and the subsequent failure to investigate whether Pack had a firearm, failing to initiate a mental health review, failing to arrest for the crimes of threats that were made in the officer's presence, and then failure to inform the tenants of the immediacy and the significance of the threats that were being made against them. Thank you. Thank you, Your Honor. Thank you. Thank you. Will Attorney Podolsky please introduce himself for the record? Good morning, Your Honor. It's Joseph Podolsky for the defendants. May it please the Court. I'd like to start with just a bit of housekeeping. There were three claims that were remanded back to the district court after the first appeal of this matter, one of which we've talked about, which is the claim against Officer Dexter, and the other was a Monell claim and a state Civil Rights Act claim. Appellant's brief appears to have waived the Monell claim and the state Civil Rights Act claim. So unless Your Honor has any questions on those, I don't plan to address them at all. The way that I plan on arguing today is to approach the constitutional question and the qualified immunity question, because I think that the answer to both is an affirmative no violation of the Substantive Due Process Clause. I think it's both as a matter of law, and it's there where I disagree with the district court's second summary judgment decision, and I think that the state of the law was not clear in accordance with the Supreme Court precedent, recent Supreme Court precedent. Counsel, you can choose to argue the case any way you want, but in the qualified immunity area, we tend to write narrowly, and the second prong of the district court's was the law clearly established. If you win on that, that is sufficient. I understand, Judge Lynch, and I plan on essentially making the same argument while addressing exactly that issue, because I think... Go ahead, but I don't understand what you just said. What I mean by that is... It's not the same argument. There were two different arguments. Well, I think what I mean by that, Judge, is that the case law on the topic established that there was not even a substantive due process violation, and that being the case, that answers the clearly established prong of the qualified immunity analysis. And I think... Well, I'll give you one more hint. Why don't you start with the second part of that analysis, whether a reasonable officer would have understood under the law at the time that he was violating the substantive due process rights of the tenants who were shot here? Of course, and so on that, I think the answer is in the DeShaney case, because the DeShaney case is the rule, and my sister makes an alternative argument in her brief to say where the Irish, too, says that some violations of the Constitution are so clear that there need not be a specific case directly on point factually. The rule in this case, though, is to the exact contrary of the appellant's position. The rule is DeShaney, which is to say that there is no constitutional duty for the state or the police to protect, even in the face of risks of private violence such as the fact pattern in this case. But, counsel, I thought that the state created danger doctrine, which our court has adopted, is an exception to DeShaney, so I think it's probably there that you should focus your argument rather than on DeShaney itself. So the question is, if somebody acts in an affirmative way to create or enhance danger, they can be constitutionally liable. As of 2020, yeah, I agree with that, but as of 2012, the rule was the rule, and when the First Circuit or the Supreme Court were talking specifically about the scope of that rule, it was abundantly clear that there was no constitutional duty to protect. Counsel, let me join Judge Rickleman in trying to get you to focus on some issues that are of concern. Why don't you take the Rodriguez case facts and compare this case to the Rodriguez case? Rodriguez, as we said in Irish, was a clear warning to police departments around the First Circuit that this court, on the appropriate facts, might well find those facts met the state-created danger doctrine. As your opponent has pointed out, Rodriguez predates the events in this case, so why don't you please draw some factual comparisons and keep in mind the arguments that your opponent has made as to her various theories as to how the danger was enhanced. Thank you, Judge. Rivera was a 2005 case. It involved a district attorney, not a police officer, and the question there was whether or not the district attorney had a substantive due process duty to protect, having made promises to protect a state witness who told the district attorney specifically, if you put me on the list, if you subpoena me, then the accused will murder me. And the DA in that case said, don't worry, we'll protect you. They put him on the list, then subsequently provided absolutely no protection whatsoever. Essentially, you could say misleading the witness into a false sense of security, and the witness was subsequently murdered. And in that case specifically, I think cuts in favor of the defendants in this case, even if we were to say that there was a police officer involved, because that is a specific fact pattern, where there's a specific promise of protection to the witness that leads the witness into a false sense of security, that the state then does not provide. Counsel, so can I, let me pose this question to you. I understand what you've argued about the facts of Rivera, and you're right. You've stated the facts accurately, but I think what we said in Irish when we were discussing that case is that one of the reasons we decided there was no state-created danger in that case was because the officers, the acts taken by the officers, or the defendants, were essential to the investigation and performed appropriately. And I think what your opposing counsel has argued is that's not true here, and that what the officer did was not essential and was not done appropriately, that there were several things that he did. He agitated the person to a state where he was more threatening and more likely to take actions against the victims than before he interacted with him. He didn't do a mental health evaluation. I mean, you heard her argument. There were a number of things that she says were clearly inappropriate here, and that's why this case is different. Can you address that? Yes, Your Honor. I respectfully disagree with my sister's arguments. The record shows that the plaintiffs pointed to one particular policy where they argued that that policy required specific action, required affirmative acts to do mental health evaluation and potentially arrest Mr. Pack, and that's not what the policy says. And the district court finding reflects that, that the policy is discretionary, that it's within the officer's discretion in the circumstances of the case to make that determination. And in this case, and I think in the Supreme Court progeny that says specifically what we're supposed to be looking at when we're evaluating qualified immunity, we look at what the officer knew at the time that he was at the call in the first place, not what we know in hindsight. And so in that case, what we knew at the time, or what Officer Dexter knew at the time, was that though Pack was making these menacing, inappropriate, threatening statements, that the plaintiffs reported to Officer Dexter, he does this all the time. He acts this way. The specific call was made because of the shooting threats that he was making prior to Officer Dexter's arrival. And then what was reported was that if Ms. Pack is home, that she usually calms him down, and that's the end of it, and she'll come over and apologize after the fact. And so that's what was reported to Officer Dexter before he went over and spoke with Mr. Pack. Not something shy of threats of murder. It was exactly threats of murder. But that this was him. This is what he does. And it wasn't like that Officer Dexter was dealing with the assailant in the Irish case who had a criminal history that we could only begin to describe with an incredible amount of violent crimes specific to Irish in particular. Mr. Pack was 74 years old with no criminal history whatsoever. Counsel, you're absolutely right. He's very different from the defendant in the Irish case. But what we do have here is the victims call 911. So they feel threatened enough to call 911. An officer comes. He speaks to the person who's been threatening to shoot them. The person continues to threaten to shoot them and says there's going to be a bloody mess. And the officer leaves without doing anything and without indicating, according to your opposing counsel, indicating to the victims that he's actually even more agitated than when I arrived. Why isn't that like the case where the police officers come to speak to a domestic violence abuser and suggest that everything is okay and they leave without arresting him? Why isn't this situation similar to that? The officer arrives. 911 is called. The person is threatening to shoot the victim, saying there's going to be a bloody mess, and the officer just leaves, doesn't arrest. Doesn't that suggest he's condoning his behavior? The record does not support a conclusion that he was condoning Mr. Pack's behavior. He repeatedly admonished him and told him he couldn't do that. And I think in the circumstances presented to him, he testified to this in his deposition, he was looking at this as if Mr. Pack was saying these things but was never going to act on them because of the history that was in front of him. But legally, to answer your question, we answer that with sodos v. flores because that's the fact pattern of that case, which is a case of our circuit in 1997. The threat there was deadly violence. The officer responded and took no affirmative action to arrest or investigate the assailant in that case. And then I think we look to vertical precedent, which is the Town of Castle Rock case. And I think that goes to what I was talking about earlier and the consensus of Sister Circuit authority, or lack thereof, in this case. The Town of Castle Rock case is that exact fact pattern, where there's a deadly threat. There's, in that case, actually stronger facts for the plaintiffs because you have a deadly threat, you have a restraining order, you have policy that says that enforcement of restraining orders is mandatory, and you have state law that says enforcement of restraining orders is mandatory. And so in that case, the Tenth Circuit said, well, this seems to fit cleanly within the Ducheney exception to the rule, or sorry, the state-created exception to Ducheney. And the Tenth Circuit said, we're going to find that this is a viable theory of liability under that exception. And in 2006, the Supreme Court took the case up and said, no, this is the rule. This is not the exception because it needs to be an affirmative act. And as you were saying to my sister in one of your questions, Judge Rickleman, the affirmative act can't just be any act. It needs to be a specific violation of police policy, a specific violation of state law, none of which can be pointed to in this case, but which is in stark contrast to Irish. And it is exact and Kennedy, which my sister relies upon significantly, which is exactly why in 2017 this court said in the Irish case that Rivera was a warning. We were considering potentially applying the state-created exception, even though it's never been done before in the circuit. And I think that history cuts in favor of Officer Dexter. But in Irish, you had the fact pattern to say there were multiple violations of state law. There were multiple violations of police procedures and rules and specifically obvious common sense violations, such as you cannot call Lord in that case and tell him specifically that Irish had accused him of rape and do it by leaving a voicemail on his phone right after Lord Irish said, if you do that, he will retaliate and it will be deadly. That there's a stark difference because the officers in that case, we can look at those facts and say, you knew what you were doing was wrong. Whereas in this case, Officer Dexter evaluating the circumstances that were in front of him, saying not with the benefit of hindsight, but with the benefit of looking at Mr. Pock and the history with the tenants in that case. I don't think the threats are real and that's why I'm exercising the discretion the way I am. Thank you, Your Honors. Thank you. Will Attorney Hanley reintroduce herself for the record and proceed with your rebuttal time? Yes, Your Honor. Attorney Hanley for the appellants. So to the point of enhancing the risk, how he enhanced the risk, I would say that I agree with the district court's opinion that's outlined on page 30 and 31 of its opinion. With respect to the second part, the qualified immunity prong, I would submit that the Irish 2 case says that the Rivera Bell that was rung in 2005 is a broad warning. And the language specifically is warned that if an officer performed a non-essential affirmative act, which enhanced the danger, and then the causation exists, and the officer's actions shocked the conscience, the officer could be held liable. That same warning bell was ringing in 2005, was ringing in 2012. In Irish 2, this court went on to look at the Monfields case and the Kennedy case for more similar fact patterns. But I submit to this court that the Irish 2 case could have ended even if the Monfields and Kennedy cases did not exist, ruling the same way, based on that broad warning bell. Counsel, in terms of the non-essential affirmative act that enhanced the danger here, I understand when you spoke to us before, you gave a number of examples of what you thought qualified. Can you, if you can, tell us what you think is your strongest argument? What is the clearest non-essential affirmative act that the officer engaged in here that enhanced the danger to the victims? So the non-essential act, during the duration of the conversation, would be having the, I would say, as the district court points out, confirming that as a landlord, PAC did not have any rights. PAC saying, I got news though, I'm glad that you say that, that I don't have any rights. The court agreed that a jury could find that Officer Dexter confirmed his beliefs, that that was the downside of being a landlord here. He knew it was very frustrating and that he wished he had more responses. Thank you.